Filed 4/20/16  P. v. Sangurima CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRISTIAN SANGURIMA,<br><br>　　　　Defendant and Appellant. | B257872<br><br>(Los Angeles County<br>Super. Ct. No. BA411802) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald H. Rose, Judge.  Affirmed.

Mark J. Shusted, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Roberta L. Davis and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Christian Sangurima, who was convicted of a carjacking that was committed for the benefit of, at the direction of, or in association with a criminal street gang with the intent of promoting, furthering, and assisting in criminal conduct by gang members (Pen. Code,[1] §§ 215, subd. (a), 186.22, subd. (b)(4)), appeals his conviction and sentence on the grounds that he personally was denied the right of allocution before imposition of judgment and that the court potentially committed error under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). He requests that the matter be remanded for the limited purpose of permitting him to exercise a personal right to show legal cause why judgment should not be pronounced. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

After a jury trial, Sangurima was convicted of carjacking, and the jury found true the special gang enhancement allegation. Sangurima's appointed attorney filed a motion for new trial.

On July 25, 2014, Sangurima, his attorney, and the prosecutor appeared for a hearing on the new trial motion, a court trial on prior conviction allegations, and sentencing. Sangurima's counsel led off the hearing by requesting a continuance to accommodate his schedule and because Sangurima was in the process of retaining private counsel. The court denied the requested continuance and turned to the new trial motion, asking counsel if there was anything he wished to add to his written presentation. Counsel said he had nothing to add but that his client wished "to address the court on a new trial motion." The court declined to permit Sangurima to speak because he was represented by counsel.

Sangurima began to address the court, but the court responded, "You may keep quiet," and asked counsel if there was anything more he would like to say. Counsel stated that he believed that his client felt that he had not had an opportunity to review the motion for a new trial. The prosecutor declined to argue the motion, and the court began to rule on the motion for new trial. As the court spoke, Sangurima interrupted, saying,

---

[1] All further statutory references are to the Penal Code.

2

"It's not right." The court told him to be quiet, but Sangurima continued: "For the record, I try to address the court. That's not right." The court told Sangurima, "You don't have a right to speak. You have an attorney. I will have you removed from the courtroom if you do not stop disturbing this court."

The court finished explaining its ruling denying the new trial motion, and then Sangurima's counsel said, "Your honor, Mr. Sangurima wishes to go pro per." The court asked if Sangurima was prepared to proceed that day, and Sangurima told the court, "I would need some time." The court responded, "I will deny the motion. It is untimely. This is a blatant attempt by Mr. Sangurima to postpone sentencing in this matter. He was convicted by a jury. Matter has been continued until today's date. It is denied."

Sangurima protested: "I have a motion done already. Let me get my paperwork. I have a motion. You cannot deny my *Faretta*[2] rights." "Yes. It is denied, and you will stop speaking," said the court. Sangurima told the court that there was case law to support his position, and that the court could not deny him his right to self-representation. The court again stated its finding that Sangurima was attempting to delay sentencing: "He's had ample opportunity to retain private counsel. He has failed to do so. And after that motion was denied, he decided to attempt to have another method to postpone this matter. In addition, a [motion to continue under section] 1050 was not filed in this case."

The court proceeded to conduct the priors trial, and Sangurima's counsel advised the court that there was no legal cause why judgment should not be pronounced. As the court heard argument from the prosecutor and defense counsel as to the appropriate sentence to be imposed, Sangurima interrupted, stating, "I want to address the court." The court began, "You cannot give—" and Sangurima interjected, "May I address the court?" The court continued discussing sentencing with counsel.

Sangurima's counsel advised the court that Sangurima and his mother wished to address the court. The court permitted Sangurima to speak. Sangurima asked the court

---

[2] *Faretta v. California* (1975) 422 U.S. 806 [concerning the right to self-representation] (*Faretta*).

3

to excuse him for having interrupted, and said that he had no "time to see what [the] new trial motion was." The court advised Sangurima that he was permitted to address sentencing, not other issues.

Sangurima said, "Okay. For the record, Your Honor, I try to ask [for] my *Faretta* rights. You deny—" The court interrupted, asking, "Anything you would like to say in regards to sentencing, yes or no?" Sangurima said, "But you denied my *Faretta* rights without even giving me a chance or anything." The court said, "Okay. Thank you. [¶] I will not hear from his mother either. He has no right to present his mother." Sangurima responded, "There is a case out of Oakland. You cannot deny my *Faretta* rights."

The court began to sentence Sangurima, then broke off to tell Sangurima that he would be removed from the courtroom if he did not stop speaking. Sangurima said, "He is not representing me. I don't want him to represent my—" "I am warning you to stop speaking if you want to be here for your sentencing," said the court. Sangurima said, "I asked you for my *Faretta* rights," and then interrupted the court again as it attempted to impose sentence. The court ordered Sangurima removed from the courtroom. Sangurima again protested that the court was denying him his *Faretta* rights and that he asked to address the court. Sangurima was removed from the courtroom and the court sentenced him to life in prison with a minimum of 23 years to be served. Sangurima appeals.

## DISCUSSION

### I.    Denial of Opportunity to Address the Court Prior to Judgment

Section 1200 provides that when a defendant appears for judgment, the court must, among other things, ask the defendant "whether he has any legal cause to show why judgment should not be pronounced against him." Sangurima argues that this right is personal to the defendant and that he was denied the right to allocution when he was denied the opportunity to address the court personally with respect to legal cause prior to the pronouncement of judgment. We conclude Sangurima was not denied his rights.

"In legal parlance, the term 'allocution' has traditionally meant the trial court's inquiry of a defendant as to whether there is any reason why judgment should not be

pronounced.  [Citations.]  In recent years, however, the word 'allocution' has often been used for a mitigating statement made by a defendant in response to the court's inquiry.  [Citation.]" (*People v. Evans* (2008) 44 Cal.4th 590, 592, fn. 2, italics omitted (*Evans*).)  Sangurima does not claim he was denied his right of allocution in the nontraditional sense:  he does not argue he wished to make a mitigating statement in response to the court's inquiry but was not allowed to do so.  Instead, he claims that section 1200 and *Evans* give a defendant the right to the traditional form of allocution that requires that the defendant, even when represented by counsel, must be personally afforded "the right to stand and personally present 'legal cause' why judgment should not be pronounced. . . ."  This is not the law.  "When the court asked whether there was any legal cause why judgment should not be pronounced and appellant's counsel replied that there was not, this constituted compliance with . . . section 1200." (*People v. Sanchez* (1977) 72 Cal.App.3d 356, 359 (*Sanchez*); see also *People v. Cross* (1963) 213 Cal.App.2d 678, 681 (*Cross*) ["the inquiry made by the court and the response thereto of the defendant's counsel . . . constituted a compliance with the law of this state as to allocution"].)

## II.    "Potential *Marsden* Error"

Sangurima alleges that the trial court committed what he describes as "potential *Marsden* error," referring to the opinion in *Marsden*, *supra*, 2 Cal.3d 118 and the right of a defendant to request replacement of his appointed counsel.

Sangurima does not argue, nor could he based on this record, that he sought and was denied a hearing pursuant to *Marsden*, *supra,* 2 Cal.3d 118.  The court's duty to conduct a *Marsden* hearing arises only when there is "'at least some clear indication by defendant that he wants a substitute attorney.' [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 157.)  As one basis for his request for a continuance, defense counsel had advised the court that Sangurima wanted to retain private counsel, but nothing Sangurima said to the trial court in the course of attempting to make a presentation clearly indicated a desire for substitute appointed counsel.  Instead, Sangurima wanted to address the court concerning the new trial motion, and when told he could not do so because he was

represented by counsel, he attempted unsuccessfully to assert the right to self-representation to remove that obstacle to making his presentation. At one point, Sangurima did say, "He is not representing me. I don't want him representing my—." This statement, however, was immediately preceded by and immediately followed by Sangurima's statements that he had asked to represent himself under *Faretta*, *supra*, 422 U.S. 806, and his belief that the court could not deny that request. We understand this solitary reference to counsel, made in the context of Sangurima's attempt to assert his right to self-representation and not alluding to any desire for substitute counsel, as part of the attempt to represent himself. We also observe that the record demonstrates that Sangurima knew how to obtain a *Marsden* hearing, because he had done so in the past. Immediately prior to the commencement of trial, Sangurima had requested and obtained a *Marsden* hearing where he cogently presented the basis for his dissatisfaction with counsel. (See *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 741 [a defendant's prior *Marsden* motions demonstrate his awareness of his entitlement to a hearing if he desired to substitute counsel].) There was no *Marsden* error here.

Instead, Sangurima asserts that there was "potential *Marsden* error." While acknowledging that "[t]he record is inadequate to deduce the actual points appellant would have made had he been given the opportunity to speak" Sangurima asserts that his comments "may have included [a] recitation of the errors by trial counsel and their prejudice to his defense." Building on that speculation, and proceeding on the premise that he had a right to allocution with respect to legal cause under section 1200, Sangurima suggests that if he had been permitted to speak, and if as part of that speech he had "list[ed] his complaints against trial counsel, appellant might also have realized he needed a different attorney, and requested a *Marsden* hearing, which would have triggered further inquiry from the court." Sangurima contends that the matter should be remanded to "conduct the proceedings that should have been conducted but for trial court error," which he later specifies to be "allowing appellant to exercise his right personally to show legal cause why judgment should not be pronounced, including 'a hearing on defendant's motion for a new trial . . . .' [Citation.]"

6

This argument has no merit. As we have already concluded, because he was represented by counsel during the inquiry as to legal cause why judgment should not be pronounced, Sangurima had no right to personally address the court on this question, and his counsel's representation that there was no legal cause was sufficient to meet the requirements of section 1200. (*Sanchez*, *supra*, 72 Cal.App.3d at p. 359; *Cross*, *supra*, 213 Cal.App.2d at p. 681.) Moreover, Sangurima's argument rests entirely on speculation that he might have alleged that his counsel's performance was constitutionally deficient if he had been allowed to argue the new trial motion. "[E]rror must be affirmatively shown by the record and cannot rest upon speculation." (*People v. Crawford* (1953) 115 Cal.App.2d 838, 842.) The record, furthermore, does not support this speculation. Sangurima's prior *Marsden* hearing, as well as his vehement and persistent demands to speak on the new trial motion and to represent himself, both suggest that had Sangurima desired to raise concerns about the quality of his counsel's representation, he was aware of how to do so and able to raise such issues to the court. As no error has been demonstrated, no remand is appropriate.

### III.    Self-Representation

In his reply brief, Sangurima for the first time argues that he timely, knowingly, and unequivocally asserted his right to self-representation under *Faretta*, *supra*, 422 U.S. 806. Claims not raised until the reply brief are waived. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) Even if we consider this argument, however, Sangurima's argument presents no basis for reversal. "The right of self-representation is absolute, but only if a request to do so is knowingly and voluntarily made and if asserted a reasonable time before trial begins. Otherwise, requests for self-representation are addressed to the trial court's sound discretion." (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) Here, Sangurima's request to represent himself was untimely. "A motion for self-representation made after the jury returns its verdict on a primary offense but prior to commencement of a bifurcated trial on prior convictions is untimely and subject to the trial court's discretion because proceedings on the priors are merely part of the trial."

(*People v. Miller* (2007) 153 Cal.App.4th 1015, 1023; see also *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1048.)  Similarly, requests for self-representation at sentencing are not timely unless they are made within a reasonable time prior to the commencement of the sentencing hearing.  (*Miller*, at pp. 1023-1024; see also *Doolin*, at p. 454 [capital defendant's request to represent himself "manifestly untimely" when made the day set for sentencing].)  Here, Sangurima did not express any interest in the sentencing proceeding.  He made his *Faretta* motion so that he could pursue his motion for a new trial, a collateral proceeding that is a continuation of the trial.  Sangurima's *Faretta* motion therefore was not timely, and consequently he did not have an absolute right to represent himself.  Rather, his right to self-representation at that point was subject to the court's discretion.  (See *Doolin*, at p. 455, fn. 39.)  Sangurima's demand to represent himself was made shortly after his request for continuance had been denied, and Sangurima admitted to the court that he was not ready to proceed as his own counsel that day.  The trial court did not abuse its discretion in denying the *Faretta* request after finding the request was made for the purposes of delay.  A "legitimate concern" of the trial court is whether the defendant's request "would needlessly delay the proceedings."  (*Id*. at p. 454.)

## DISPOSITION

The judgment is affirmed.


ZELON, J.


We concur:



PERLUSS, P. J.                          BLUMENFELD, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8